STONES RIVER UTILITIES, INC., )
)
     Plaintiff/Appellant, )
) Appeal No.
) 01-A-01-9505-CH-00217
VS. )
) Davidson Chancery
) No. 94-1665-III
METROPOLITAN GOVERNMENT OF )
NASHVILLE, DAVIDSON COUNTY, )
TENNESSEE, acting by and through )
the ELECTRIC POWER BOARD and )
d/b/a "NASHVILLE ELECTRIC )
SERVICE" or "NES," )
)
     Defendant/Appellee. )

**FILED**

**Oct. 25, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR


STANLEY M. CHERNAU
R. GARRY CHAFFIN
CHERNAU, CHAFFIN & BURNSED
424 Church Street
Suite 1750
Nashville, Tennessee 37219
     Attorneys for Plaintiff/Appellant

CYRUS L. BOOKER
CARLA G. FOX
BOOKER & ASSOCIATES
First American Center
315 Deaderick Street
Suite 1280
Nashville, Tennessee 37238-1280
     Attorneys for Defendant/Appellee


AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED


                 BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

This is a contract dispute in which the chancellor found that the uncontradicted proof showed that the plaintiff had no cause of action for the acts alleged in the complaint. We reverse on the single ground of estoppel and remand for further proceedings on that issue alone.

## I.

In 1993 Stones River Utilities, Inc. secured a contract to supply meter readers to Nashville Electric Service on an as needed basis. The specifications sent out soliciting bids on the work stated: "The Contractor will furnish a maximum of fifteen (15) Contract Meter Readers with twelve (12) Contract Meter Readers normally being used on an as needed basis as determined by NES." Stones River was the successful bidder and signed an agreement including the following provisions:

> It is expressly understood that NES is not required to assign any amount of work or any number of projects to the contractor. The necessity of such work, and the assignment thereof to the contractor is left solely and exclusively to the judgment and determination of NES.
>
> *   *   *
>
> Either party may terminate this contract without cause by giving the other party at least thirty (30) days notice in writing.

After securing the contract, Stones River sought financing to purchase new trucks for its meter readers but ran into difficulty because of the cancellation clause in the contract. NES's general counsel agreed to clarify that provision and sent Stones River a letter on June 9, 1993 containing the following:

It is standard policy of NES that all of its service contracts state "... NES is not required to assign any amount of work or any number of projects ...", and further, to have a 30-day notice of cancellation of the contract.

NES is in the business of distributing electricity, and as such, uses meters to record the amount of electricity used by its customers. In order to know how much is used, NES has to have individuals to read these meters. As long as NES is in this business, the program of reading meters will always be utilized.

As to the 30-day notice of cancellation, NES reserves this right in the event the contractor does not fulfill the terms of the contract.

I hope this clarifies the matter for you.

The letter was shown to the truck dealer, and subsequently, Stones River was able to finance the new vehicles.

On January 10, 1994 NES sent a letter terminating the contract. The letter cited a decision of "current management at NES" to reorganize the meter reading function and return it to "permanent NES employees." Stones River registered a protest and on February 4, 1994, NES sent another letter stating, "Due to recent announcements and the undetermined effects on the meter reading function, the action to terminate the above contract has been rescinded. The purpose of this action is to keep options open to handle any meter reading contingencies."

Stones River filed this action on February 16, 1994 alleging that NES breached the contract and an implied covenant of fair dealing and was estopped to rely on the sections of the contract quoted above. Despite the breakdown in the parties' relations, from late February, 1994 through June, 1994, NES assigned enough work to Stones River to occupy two meter readers and a lead person. After that, although the contract remained open, NES did not assign any work to contract meter readers.

- 3 -

The chancellor granted summary judgment to NES. In his memorandum opinion the chancellor said, "Stones River may or may not have some other cause of action based upon representations made to it by NES after the contract was executed, but NES did not breach the contract." We agree that NES could not be liable on the original agreement because it did not obligate NES to assign any work to Stones River and it gave NES the right to terminate the agreement on thirty days notice.

On appeal, however, Stones River argues waiver, estoppel, and modification of the contract (based on the events that took place after the agreement was signed). With respect to the waiver and modification contentions, we do not find any support for them in the record. Even if the letter issued on June 9, 1993 is considered as somehow altering the written agreement, it does not commit NES to furnishing any level of work to Stones River. Arguably, it could be taken as a modification of the right to terminate the contract without cause; but the paragraph referring to meter readers, as a matter of law, is too vague for a reasonable person to place any reliance on it.

With respect to the estoppel issue, Stones River's president said in an affidavit filed in opposition to the motion for summary judgment that, on May 14th, 1993, she met with members of NES's staff who strongly suggested that Stones River obtain new vehicles for use in performing the contract. Specifically, she said, "NES further assured us that we would have twelve readers every day for the duration of the contract, if we bought new trucks. Therefore, at the urging of NES we decided to purchase all new vehicles." Earlier, when she gave her deposition, she was asked if NES told her she had to buy new vehicles. She replied:

> No, I don't think they said you had to purchase new vehicles, because they couldn't say that. I had to -- when

the specs called for properly functioning vehicles, but they said we needed new vehicles. And they made that very clear.

In its complaint Stones River made the following allegations:

> 8.      Plaintiff would show that when it received the contract it was necessary to acquire thirteen vehicles. Plaintiff's President, one Jamie Wilson, on May 14, 1993 met with NES representatives Melvin Bess, Tyler Mills, and Don Hill to discuss the start-up of the contract and the necessity for the purchasing of vehicles.
>
> *    *    *
>
> 11.      Plaintiff alleges that at this meeting Ms. Wilson was advised by the NES representatives that Plaintiff would have twelve routes on a daily basis and that if Plaintiff's performance was good the contract would be extended or renewed, which gave further credence to the insistence that Plaintiff purchase new vehicles.

An action based on estoppel may be brought where the promises of one party are relied on by another party to his detriment. In *Foster & Creighton Co. v. Wilson Contracting*, 579 S.W.2d 422 (Tenn. App. 1979), this court said:

> [W]hen one man by his promise induces another to change his situation, a repudiation of the promise would amount to a fraud. Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forebearance, it is binding if injustice can be avoided only by enforcement of the promise.
>
> 579 S.W.2d at 427.

We are of the opinion that there are contested facts in this case that make summary judgment on the estoppel issue improper. See *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). Therefore, we reverse the judgment below on that point

and remand the cause to the trial court for further proceedings on the issue of estoppel only.  Otherwise, the judgment is affirmed.

- 6 -

Tax the costs on appeal to the appellee.


_____
BEN H. CANTRELL, JUDGE


CONCUR:



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE